# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

RODONNA K. WOESSNER,       )
                           )
          **Plaintiff,**  )
                           )
v.                         )    Case No. CIV-18-263-SPS
                           )
ANDREW M. SAUL,            )
**Commissioner of the Social**  )
**Security Administration,** [1] )
                           )
          **Defendant.**  )

## OPINION AND ORDER

The claimant Rodonna K. Woessner requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons discussed below, the Commissioner's decision is REVERSED and the case REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that

---

[1] On June 4, 2019, Andrew M. Saul became the Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Mr. Saul is substituted for Nancy A. Berryhill as the Defendant in this action.

[s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800

---

[2] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

(10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

**Claimant's Background**

The claimant was forty-nine years old at the time of the administrative hearing (Tr. 40). She has a high school equivalent education and has worked as a home attendant and nurse assistant (Tr. 53-54). The claimant alleges that she has been unable to work since May 8, 2015, due to depression, posttraumatic stress disorder ("PTSD"), learning disability, attention deficit hyperactivity disorder ("ADHD"), history of addiction, bipolar disorder, and problems with her lower back, left leg, and hip (Tr. 182).

**Procedural History**

On August 10, 2016, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434 (Tr. 14, 160-66). Her application was denied. ALJ Kenton W. Fulton conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated October 17, 2017 (Tr. 14-30). The Appeals Council denied review, so the ALJ's opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 404.981.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity ("RFC") to perform a limited range of light work as defined in 20 C.F.R. § 404.1567(b), *i. e.,* she could lift and carry ten pounds

occasionally and less than ten pounds frequently, sit for a total of six hours in an eight-hour workday, stand/walk for a total of six hours in an eight-hour workday, and occasionally stoop (Tr. 24). Due to psychologically-based factors, the ALJ found the claimant could perform simple tasks with routine supervision, occasional interaction with co-workers and supervisors, and no public interaction (Tr. 24). The ALJ then concluded that although the claimant could not return to her past relevant work, she was nevertheless not disabled because there was work she could perform in the national economy, *e. g.*, delivery driver, small products assembler, and mail clerk (Tr. 27-30).

## Review

The claimant contends that the ALJ erred by failing to: (i) properly evaluate her subjective symptoms, and (ii) identify jobs she could perform in light of the assigned RFC. The Court agrees with the claimant's first contention.

The ALJ found that the claimant had the severe impairments of spinal stenosis of the low back, obesity, affective disorder (depression), and learning disability; the non-severe impairments of hypertension and polysubstance dependence, in sustained remission; but that her PTSD was not medically determinable (Tr. 20). The relevant medical record reveals that the claimant presented to Dr. Brett Holland on May 12, 2015, after injuring her back at work earlier that month (Tr. 331-32). Dr. Holland found significant tension and tenderness in the claimant's lumbar and sacral muscles and joints, tenderness in her left leg, and decreased range of motion in her lumbar spine (Tr. 332). He diagnosed the claimant with somatic dysfunction of the lumbar region and lumbar strain and referred her

to physical therapy, which she later attended from August 2015 through October 2015 (Tr. 332, 376-430).

The claimant presented to Dr. Michael Carnahan on May 27, 2015, for an evaluation related to a worker's compensation claim stemming from her back injury (Tr. 290-91). Dr. Carnahan noted the claimant was tender in her low back with limited range of motion and had a positive straight leg raise test on the left (Tr. 291). He diagnosed the claimant with lumbar radiculopathy and referred her for a lumbar spine MRI, the results of which revealed acquired spinal stenosis with varying degrees of central canal and neural foraminal stenosis (Tr. 340). At a follow-up appointment on June 2, 2015, the claimant reported her back pain was improved but also reported that she could not return to work with restrictions (Tr. 288). Three days later, on June 5, 2015, the claimant reported severe back pain (Tr. 287). Dr. Carnahan noted she had tenderness in her low back with very limited range of motion and he recommended epidural steroid injections (Tr. 287).

Dr. Adam Savage managed the claimant's pain medications and administered three epidural steroid injections between July 2015 and October 2015 (Tr. 316-31). The initial injection completely resolved the claimant's radicular leg pain for more than a month, but a second injection only provided 20% relief for two days (Tr. 319, 324). Dr. Savage consistently found tenderness in the claimant's lumbosacral junction, lumbar paraspinal muscles, and sacroiliac joints (Tr. 320, 325, 330). The claimant consistently reported her pain medications reduced her pain, increased her activities of daily living, and increased her overall functional status (Tr. 318, 324, 329).

On November 3, 2015, the claimant presented to Dr. William Harris, an orthopedic surgeon, and reported persistent back pain after injections and pain medication, as well as dysthesia and numbness in her left leg (Tr. 372). On physical examination, Dr. Harris found tenderness in the claimant's midline, paraspinal muscles, and left sciatic notch; normal range of motion in her back; 5/5 motor strength in all groups bilaterally; decreased sensation on her left thigh and leg; and pain in her lumbar spine, left buttock, left thigh, and left leg (Tr. 372). Dr. Harris indicated the claimant did not have any lesions that would be a source for dysthesia and numbness and he described the degenerative changes in her back as "minimal." (Tr. 372). He stated the claimant had "more complaints than findings," indicated there was "no real danger" in her returning to some work activities, and recommended a back brace (Tr. 373).

At a follow-up appointment with Dr. Carnahan on November 23, 2015, the claimant reported continued severe back pain and indicated she could not do anything at all other than get around "fairly at home." (Tr. 281). Dr. Carnahan's physical examination was normal (Tr. 282). He assessed the claimant with unspecified back pain and indicated she was not able to work at that time (Tr. 281).

On June 6, 2016, the claimant presented to Dr. Robert Horanzy for a physical exam and to discuss weight loss (Tr. 303-04). She reported a "pins and needles" sensation in her left leg and stated that she walked four miles per day and had been doing this "off and on" for approximately six months (Tr. 303). Dr. Horanzy noted the claimant had full range of motion in her back, but her lumbar spine and left piriformis were tender (Tr. 304). He assessed the claimant with, *inter alia*, peripheral neuropathy and lower back pain (Tr. 304).

Dr. Alan Miner performed a consultative physical examination of the claimant on November 5, 2016 (Tr. 349-57). He observed the claimant was able to lift, carry, and handle light objects, squat and rise from that position with ease, rise from a sitting position without assistance, and had no difficulty getting up and down from the exam table (Tr. 351-52). Dr. Miner found the claimant had back pain on examination as well as minor range of motion limitations in her lower back, but the remainder of his physical examination was normal (Tr. 351-57).

State agency physician Dr. Walter Bell completed an RFC assessment on November 17, 2016 and found the claimant could perform medium work with occasional stooping (Tr. 67-69). His findings were affirmed on review (Tr. 84-87).

At the administrative hearing, the claimant testified that she stopped working after she injured her back at work (Tr. 43). She further testified that she experiences pain and numbness in her left leg "all the time," that her leg pain is related to her back injury, and that she experiences muscle spasms in her back once per week (Tr. 44, 49-50). The claimant stated that she participated in physical therapy and received three injections, neither of which were beneficial long term, but the injections were somewhat helpful initially (Tr. 43-44, 49). The claimant also stated that she had not been assessed by an orthopedic surgeon or neurosurgeon to see if she was a surgical candidate and that she only takes medication for her high blood pressure (Tr. 43-44, 50). The claimant further testified that she spends most of her day lying down or reclining (Tr. 52). As to specific limitations, the claimant stated she could drive short distances, lift approximately ten pounds,

stand/walk for ten or fifteen minutes, and experienced a "pins and needles" sensation when sitting for any length of time (Tr. 42, 45).

In his written opinion, the ALJ thoroughly summarized the claimant's hearing testimony, as well as the medical evidence in the record. In discussing the claimant's subjective symptoms, the ALJ found that the claimant's description of symptoms and limitations were inconsistent with the record as a whole and were not substantiated by objective findings (Tr. 25). In support, the ALJ noted the claimant did not return to Dr. Holland for treatment and that she was never treated for any mental impairments (Tr. 26). The ALJ then recited the following boilerplate language:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce some of the above alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision. Accordingly, these statements have been found to affect the claimant's ability to work only to the extent they can reasonably be accepted as consistent with the objective medical and other evidence.

(Tr. 26).

The Commissioner uses a two-step process to evaluate a claimant's subjective statements of pain or other symptoms:

> First, we must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain. Second . . . we evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities . . .

Soc. Sec. Rul. 16-3p, 2017 WL 5180304, at *3 (October 25, 2017).[3] Tenth Circuit precedent is in accord with the Commissioner's regulations but characterizes the evaluation as a three-part test. *See e. g., Keyes-Zachary v. Astrue,* 695 F.3d 1156, 1166-67 (10th Cir. 2012), citing *Luna v. Bowen*, 834 F.2d 161, 163-64 (10th Cir. 1987).[4] As part of the symptom analysis, the ALJ should consider the factors set forth in 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3), including: (i) daily activities; (ii) the location, duration, frequency, and intensity of pain or other symptoms; (iii) precipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken; (v) treatment for pain relief aside from medication; (vi) any other measures the claimant uses or has used to relieve pain or other symptoms; and (vii) any other factors concerning functional limitations. *See* Soc. Sec. Rul. 16-3p, 2017 WL 5180304, at *7-8. An ALJ's symptom evaluation is entitled to deference unless the Court finds that the ALJ misread the medical evidence as a whole. *See Casias,* 933 F.2d at 801. An ALJ's findings regarding a claimant's symptoms "should be closely and

---

[3] SSR 16-3p is applicable for decisions on or after March 28, 2016, and superseded SSR 96-7p, 1996 WL 374186 (July 2, 1996). *See* SSR 16-3p, 2017 WL 5180304, at *1. SSR 16-3p eliminated the use of the term "credibility" to clarify that subjective symptom evaluation is not an examination of [a claimant's] character." *Id.* at *2.

[4] Analyses under SSR 16-3p and *Luna* are substantially similar and require the ALJ to consider the degree to which a claimant's subjective symptoms are consistent with the evidence. *See, e. g., Paulek v. Colvin*, 662 Fed. Appx. 588, 593-4 (10th Cir. 2016) (finding SSR 16-3p "comports" with *Luna)* and *Brownrigg v. Berryhill,* 688 Fed. Appx. 542, 545-46 (10th Cir. 2017) (finding the factors to consider in evaluating intensity, persistence, and limiting effects of a claimant's symptoms in 16-3p are similar to those set forth in *Luna).* The undersigned Magistrate Judge agrees that Tenth Circuit credibility analysis decisions remain precedential in symptom analyses pursuant to SSR 16-3p.

affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) [quotation omitted].

The claimant contends, *inter alia*, that the ALJ failed to consider the factors set forth above when evaluating her subjective statements and improperly discounted such statements with boilerplate language that did not explain the reasons for his findings. The Court agrees. Although the ALJ examined the evidence of record and outlined the appropriate process for evaluating the claimant's pain and other symptoms in his decision, he did not mention or discuss any of the factors set forth in SSR 16-3p and 20 C.F.R. §§ 404.1529(c)(3), and further failed to apply those factors to the evidence. The ALJ is not required to perform a "formalistic factor-by-factor recitation of the evidence[,]" *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000), but simply "recit[ing] the factors" is insufficient, *See* Soc. Sec. Rul. 16–3p, 2017 WL 5180304 at *10, and here the ALJ did not even do that.

Furthermore, the only specific reasons given by the ALJ for finding the claimant's subjective complaints were not consistent with the medical and other evidence are not entirely supported by the record. For example, the ALJ noted the claimant never returned to Dr. Holland. While it is true that the claimant did not return to Dr. Holland after her initial appointment in May 2015, the claimant did regularly pursue treatment for her back pain and leg pain from other providers. Similarly, the ALJ correctly noted that the claimant did not receive any mental health treatment, but the Court is unclear what bearing the claimant's failure to pursue mental health treatment has on the credibility of her allegations that she suffers from disabling back pain that radiates into her left leg. Further examination

of such "perceived" inconsistencies indicates that the ALJ only cited evidence favorable to his foregone conclusions and ignored evidence that did not support his conclusions. *See Clifton*, 79 F.3d at 1010 ("[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects."), *citing Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984).

Lastly, although boilerplate language is disfavored, it "is problematic only when it appears in the absence of a more thorough analysis.'" *Keyes-Zachary*, 695 F.3d at 1170, *quoting Hardman v. Barnhart*, 362 F.3d 676, 678-679 (10th Cir. 2004). In this case, the ALJ's boilerplate language indicates the reasons for his findings are "explained in this decision"; however, as explained above, the specific reasons the ALJ provided as support for his subjective symptom findings are not supported by the record, and the ALJ did not thereafter conduct any further analysis of the claimant's subjective symptoms. Thus, the ALJ wholly failed to explain his boilerplate conclusion with affirmative links to the record, and his analysis of the claimant's subjective symptoms was defective. *See, e. g., Hardman,* 362 F.3d at 678-81; *see also Kepler,* 68 F.3d at 391 (the ALJ must "explain why the specific evidence relevant to each factor led him to conclude the claimant's subjective complaints were not credible.").

Because the ALJ failed to properly analyze the claimant's subjective statements of pain and other symptoms, the Commissioner's decision is reversed and the case remanded to the ALJ for further analysis. If the ALJ's subsequent analysis results in any changes to

the claimant's RFC, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether she is disabled.

## Conclusion

In summary, the Court finds that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. Accordingly, the decision of the Commissioner is hereby REVERSED, and the case is REMANDED for further proceedings consistent with this Opinion and Order.

**DATED** this 5th day of March, 2020.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**